_198 n. w. 5 73_

EDWARD A. WOOD, APPELLANT, v. SECURITY MUTUAL LIFE INSURANCE COMPANY, APPELLEE.

FILED APRIL 30, 1924.   No. 22685.

1. **Landlord and Tenant: LEASE: CONSTRUCTION.** A tenant occupied a barber shop in a room in his landlord's building free of charge. During his occupancy the building was reconstructed. In the lease he expressly agreed to hold the landlord harmless

Wood v. Security Mutual Life Ins. Co.

"from all liability for damage" to his "person or property" while the reconstruction of the building was in progress. By reason of the reconstruction work plaintiff's business, as a barber, was greatly impaired. *Held,* that the word "property," as used in the lease, included damage to plaintiff's business, and that, pursuant to the release clause therein, he was barred from recovery of damage.

2. **Property:** DEFINITION. A calling, business, or profession, chosen and followed, is property, and the term "property," as ordinarily employed, includes every interest any one may have in anything that is the subject of ownership, together with the right to freely possess, use, enjoy and dispose of it.

3. **Damages:** "DAMAGE" DEFINED. The term "damage," as ordinarily employed, is the indemnity recoverable by a person who has sustained an injury, either in his person, property, or relative rights, through the act or default of another.

4. **Contracts:** CONSTRUCTION. Where a contract is plain and unambiguous, its meaning should be determined without reference to extrinsic facts.

5. **Appeal:** ARGUMENT OF COUNSEL: FAILURE TO OBJECT. "The general rule is that counsel cannot remain quiet and seemingly acquiesce in remarks of opposing counsel in his argument to the jury, and after verdict obtain a reversal because of matters not objected to at the time." *Kriss v. Union P. R. Co.,* 100 Neb. 801.

6. **New Trial:** COMMUNICATIONS WITH JURORS. "While all communications during a trial between jurors and persons connected with the case are to be avoided, still a verdict should not be set aside because a witness has been seen in conversation with a juror, where it is made to appear that there was no communication with reference to the case." *Omaha Fair & Exposition Ass'n v. Missouri P. R. Co.,* 42 Neb. 105.

7. **Trial:** COMMUNICATIONS WITH JURORS. Counsel, parties, witnesses and all persons connected with a case on trial, or having interest therein, should carefully avoid all private communication with jurors.

APPEAL from the district court for Lancaster county: ELLIOTT J. CLEMENTS, JUDGE. *Affirmed.*

*Wilmer B. Comstock,* for appellant.

*Field, Ricketts & Ricketts, contra.*

Heard before Morrissey, C. J., Letton, Dean and Day, JJ., and Redick, District Judge.

Dean, J.

On and before June 1, 1915, plaintiff conducted a barber shop in a room in the south end of the basement of defendant's building, then known as the Burr block, at the southeast corner of O and Twelfth streets in Lincoln, under a written lease which was to terminate about 2½ years thereafter. About June 1st defendant began to remodel and reconstruct its building, and plaintiff, finding it necessary to procure another location, was permitted by defendant to move into and occupy a room free of charge in the north end of its building, fronting on Twelfth street, to be used as a barber shop, while the reconstruction was in progress.

Plaintiff contends that, while the rebuilding was going on, the room was thereby rendered almost useless as a barber shop for a period of about 1½ years, by being filled with smoke, dust, dirt, lime, mortar and other debris. Alleging damage in the sum of $10,000 this action was begun. From an adverse verdict, and judgment thereon, plaintiff appealed.

In his brief plaintiff says that he specially relies for reversal upon alleged misconduct of counsel and the jury, and error in the instruction of the court in respect of the written agreement, or release, which is in evidence. The agreement, which is dated July 23, 1915, so far as material here, is in the following language:

"In consideration that the Security Mutual Life Insurance Company will furnish to the undersigned without charge office accommodations in the Security Mutual Life Building, Lincoln, Nebraska, pending the remodeling and reconstruction of such building, the undersigned hereby agrees to hold said insurance company harmless from all liability for damage to the person or property of the undersigned or their employees pending such reconstruction. And the undersigned further agrees to rent from said insurance company rooms No. —— south end basement in

said reconstructed building, as shown by the plans thereof, at a rental of $60 per month, said tenancy in said reconstructed building to commence when said rooms are ready for occupancy."

Plaintiff, however, contends that he did not sign the contract, or release, which is in evidence, and avers that his name, which is inscribed thereon, is a forgery, and that this is "the vital point in the lawsuit." On this controverted point much evidence was introduced by the parties, but the jury evidently rejected plaintiff's version and accepted that of defendant. So that, in view of the fact that there is sufficient competent evidence to support a finding that the agreement was signed by plaintiff, we conclude that this question is foreclosed as against him.

In respect of the foregoing release, plaintiff contends that the alleged erroneous construction, of which he complains, is that the jury were instructed that, if it found from a preponderance of the evidence that plaintiff executed the instrument, it then became its duty to return a verdict for defendant. His argument is that the only damage which could have been reasonably contemplated thereunder was damage to visible, tangible property "which plaintiff had in his shop" and which was capable of physical custody. He insists that the contract had no reference to plaintiff's trade or business and did not therefore work a release of liability for damage thereto.

We do not think plaintiff's argument is tenable. He cites decisions to support his contention which do not seem to be in point and which, in view of the weight of authority, are not applicable to the facts before us.

It is to be noted that, by the language of the instrument in question, plaintiff agreed to hold defendant harmless "from all liability for damage to the person or property" of plaintiff. The inquiry then should be directed to what is meant, under the law, by this expression as used by the parties in their agreement.

"Property," in a broad sense, is defined as any valuable right or interest considered primarily as a source or ele-

ment of wealth, and includes in modern legal systems practically all valuable rights. Webster's New International Dictionary. In New Jersey it was held that "a calling, business or profession, chosen and followed, is property." *State v. Chapman*, 69 N. J. Law, 464. It has also been held that the owner of a vessel has a property right, not only in the vessel itself, but in its use and the business in which it is employed. *Sailors Union v. Hammond Lumber Co.*, 156 Fed. 450. At page 454, in the case last cited, the court said: "The appellee's property is not only its vessels, but the business of carrying freight and passengers, without which the vessels would lose their value. The right to operate vessels, and to conduct business, is as much property as are the vessels themselves." In Pennsylvania the court declared that the labor and skill of the workman, be it of high or low degree, the plant of the manufacturer, the equipment of the farmer, investments of commerce, are all, in equal sense, property. *Purvis v. Local No. 500*, 214 Pa. St. 348, 12 L. R. A. N. S. 642, citing *State v. Stewart*, 59 Vt. 273, 59 Am. Rep. 710. In the *Purvis* case the court held, in direct terms, that a person's business is property within the meaning of the law. In Illinois it has been held: "The term 'property' includes every interest any one may have in any and everything that is the subject of ownership by man, together with the right to freely possess, use, enjoy and dispose of the same." *Bailey v. The People*, 190 Ill. 28. In the *Bailey* case it was also held that the right to entertain lodgers in a lodging house is a property right.

The word "damage" has been defined as "loss, injury, or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's person or property." Black's Law Dictionary. "The indemnity recoverable by a person who has sustained an injury, either in his person, property, or relative rights, through the act or default of another." Bouvier's Law Dictionary.

The contract, or release, is plain and unambiguous and its meaning can be determined without reference to extrinsic facts. The conclusion is that, when fairly construed in all

Wood v. Security Mutual Life Ins. Co.

its parts, the contract contemplates a release of defendant from liability arising out of the damage of which complaint is made.

Plaintiff, however, attempted to discredit the verdict by the affidavits of several members of the jury, and in his brief he argues that it is apparent therefrom that the jurors were influenced to render a verdict against plaintiff because counsel in his argument stated that all the tenants in the building signed a like contract, and that unless plaintiff had signed the contract he could not have remained in the building. This argument, it is alleged, was based on proffered evidence which the court consistently rejected. He complains that the argument, so made, constituted such misconduct as to require the verdict to be vacated.

But we think reversible error cannot be predicated upon the objection so urged, in view of the fact that the jury were instructed to disregard all statements of counsel unsupported by the evidence. And on this point the jury were also cautioned that they should not be influenced by questions propounded and ruled out, nor by offers of testimony which were rejected, nor by any evidence which was stricken out. *Mehagan v. McManus*, 35 Neb. 633. And incidentally it may be added that defendant in its brief charges, and it is not denied, that plaintiff made no objection, at the time of the argument, to the language so used by counsel, nor was any ruling of the court requested thereon at the time. In respect of this assignment of alleged error we adhere to the following rule: "The general rule is that counsel cannot remain quiet and seemingly acquiesce in remarks of opposing counsel in his argument to the jury, and after verdict obtain a reversal because of matters not objected to at the time." *Kriss v. Union P. R. Co.*, 100 Neb. 801.

Plaintiff filed an affidavit wherein it was alleged that one of defendant's counsel was observed in conversation with a juror in the corridor of the courthouse while the case was in progress. A counter-affidavit of this juror was filed, and he therein stated that he had only a speaking acquain-

tance with the attorney; that he did converse with him in the corridor, but that the conversation was solely about the Penitentiary-Insane Asylum paving case, which involved the paving abutting his father's farm and which also abutted land owned by the attorney's family. Whether it was during the trial of the present case he did not recall. It is also charged that a juror was seen shaking hands with the president of the defendant company. In *Omaha Fair & Exposition Ass'n v. Missouri P. R. Co.*, 42 Neb. 105, in an opinion by Judge Irvine, we held: "While all communications during a trial between jurors and persons connected with the case are to be avoided, still a verdict should not be set aside because a witness has been seen in conversation with a juror, where it is made to appear that there was no communication with reference to the case." We think the showing set out in the record brings the facts within the rule announced in the case last cited, and that reversible error cannot be predicated on this assignment of alleged error. However, we think it cannot be too strongly urged that counsel, parties, witnesses and all persons connected with a case on trial, or having any interest therein, should carefully avoid all private communications with jurors.

Plaintiff contends that the court erred in denying his motion for a new trial, not only because of the giving of the instruction complained of, but also because the verdict "was not an unbiased, dispassionate expression of the jury," as shown by the affidavits of some of the jurors. To support the argument he cites *Tyler v. Hoover*, 92 Neb. 221, wherein we held that if a verdict is so clearly wrong as to cause the reviewing court to believe that it must have been found through passion, prejudice, mistake, or some means not apparent in the record, it will be set aside. We do not think the cited case is applicable to the facts. An examination of the record convinces us that the verdict is sufficiently supported by competent evidence and that from any viewpoint it is clearly right. The record fairly discloses that the verdict is based on the proved facts.

Other assignnments of alleged error have been presented which we have examined but do not find it necessary to decide. Reversible error has not been shown. The judgment is

AFFIRMED.

Note—See Landlord and Tenant, 24 Cyc. p. 1055; Property, 32 Cyc. pp. 647, 677; New Trial, 29 Cyc. p. 797; Trial, 38 Cyc. p. 1825—Damages, 17 C. J. p. 710, sec. 1; Contracts, 13 C. J. p. 520, sec. 481; Appeal and Error, 3 C. J. p. 862, sec. 763.