413 P.2d 863

Carol TANNER, a minor and L. A. Tanner and Frances Tanner, his wife, Appellants,

v.

Ronald PACIONI and Isabelle Pacioni, his wife, Appellees.*

No. I CA–CIV 292.

Court of Appeals of Arizona.

May 4, 1966.

Rehearing Denied May 26, 1966.

Review Denied June 21, 1966.

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's

No. 7654. The matter was referred to this court pursuant to A.R.S. § 12–120.23.

Moore, Romley, Kaplan, Robbins & Green, Jarril F. Kaplan and Kenneth J. Sherk, Phoenix, for appellants.

Kenneth Rosengren, Phoenix, for appellees.

HATHAWAY, Judge.

This appeal was taken by the defendants below from a judgment entered upon a jury's verdict in favor of the plaintiffs and from the order denying defendants' motion for a new trial.

Plaintiffs instituted a personal injury action in superior court, Maricopa county, to recover damages allegedly sustained by Mrs. Pacioni as the result of an automobile accident involving the car in which she was a passenger and the car driven by defendant Carol Tanner. The case was tried to a jury which returned a verdict for the plaintiffs in the sum of $12,500.

The facts which gave rise to this litigation are as follows: Carol Tanner, accompanied by three girl friends, was driving a family vehicle south on 20th Street, Phoenix, Arizona, at a speed of 30 to 35 miles per hour. (She was operating the car under a learner's permit.) As she approached the intersection of Camelback Road and 20th Street where a stop sign was situated requiring her to come to a full stop, she applied the brakes with the high heel of her shoe. Her heel slipped off the brake pedal, however, and in order to stop the car, she "slammed" on the pedal with her toe. There was loose gravel in the road which caused her car to skid into the westbound lane of Camelback Road, where the front end of the car collided with the right side of the car in which Mrs. Pacioni was a passenger.

The latter vehicle was travelling in a westerly direction in the outside lane on Camelback Road at approximately 28 to 35 miles per hour. Mrs. Pacioni was seated in the back seat between her mother and her son. A police officer was summoned to the scene of the accident and Mrs. Pacioni's mother was sent to the hospital in an ambulance. No other injuries were reported to the officer.

Defendants attack the $12,500 verdict as presumptively being the product of passion

**300**

or prejudice because of the trial court's erroneous instructions and denial of defendants' motions for mistrial. Their contention in this regard is that the award was so disproportionate to the injury proved as to justify the conclusion that the verdict was the result of passion, prejudice or other improper motive. See Hilltop Metals Min. Co. v. Hall, 29 Ariz. 300, 301, 241 P. 35 (1925). They argue that this court is authorized to presume passion and prejudice if one of the following causes appear: (a) argument of counsel of such a nature as might have been calculated to arouse the prejudice of the jury; (b) improper instructions given by the trial court which might have misled the jury; or (c) when the amount of the verdict as compared with the legal damages shown by the evidence is so great as to shock the conscience of the appellate court. Standard Oil Co. of California v. Shields, 58 Ariz. 239, 246, 119 P.2d 116 (1941).

Defendants assign as error the trial court's denial of their motion for mistrial made after plaintiffs' counsel in his opening statement referred to Mr. Tanner as follows:

"Mr. Tanner is the gentleman sitting over here and is the head of the local bus line and a respected and prominent businessman."

An additional motion for mistrial by the defendants was denied when on cross-examination plaintiffs' counsel asked Mr. Tanner, "What is your present occupation, sir?" Mr. Tanner responded "Transportation." When asked by counsel "And what, specifically, in transportation?" defense counsel objected and moved for a mistrial on the same grounds stated in the earlier motion.

In support of the initial motion counsel stated:

"These matters have nothing whatever to do with this lawsuit and it is just as prejudicial as to inform the jury that the defendants are insured, if not tantamount to the informing of the jury that the defendants are insured, and we sub-

mit that the defendants cannot have a fair trial under the state of affairs, and we ask the Court to declare a mistrial."

On appeal, defendants argue that the foregoing constituted allusions to Mr. Tanner's wealth, that such was improper and constituted reversible error, citing the annotation in 32 A.L.R.2d 9, pp. 18–27. We agree that misconduct of counsel which is *calculated* to create sympathy or prejudice and which *may* have done so would justify granting a new trial. Sanchez v. Stremel, 95 Ariz. 392, 396, 391 P.2d 557 (1964). The trial court, however, is vested with great discretion in the conduct and control of the trial. Higgins v. Arizona Savings and Loan Ass'n, 90 Ariz. 55, 69, 365 P.2d 476 (1961); Buehman v. Smelker, 50 Ariz. 18, 25, 68 P.2d 946 (1937). An appellate court will defer to the trial court's ruling as to misconduct of counsel unless the conduct is clearly prejudicial. Olympic Land Co. v. Smithart, 1 Ariz.App. 175, 179, 400 P.2d 846 (1965). We cannot say that counsel's reference in his opening statement to Mr. Tanner was "clearly prejudicial." It requires a broad stretch of the imagination to construe the reference to Mr. Tanner as a respected and prominent businessman and head of the local bus company as tantamount to informing the jury that the defendants were insured, as urged in the motion for a mistrial. The statement cannot be construed as an effort to contrast the litigants' respective financial conditions since plaintiffs' counsel went on to describe plaintiffs as "moderately successful" in the restaurant business.

Defendants contend that it was misconduct and reversible error on the part of plaintiffs' counsel to ask Mr. Tanner about his occupation, i. e., what, specifically, in transportation he did. When defense counsel objected to the question, counsel for the plaintiffs explained that he wanted to find out Mr. Tanner's qualifications to testify concerning questions posed by defense counsel. Defendants claim that the purpose of the question was to convey to the jury the impression that Mr. Tanner was a wealthy

man. The trial court was apparently satisfied with the explanation given by plaintiffs' counsel when defendants renewed their motion for a mistrial at this point. The defendants' objection was sustained however, and we cannot see how the jurors could have been influenced or misled by the question.

It is further urged that plaintiffs' counsel continued to contrast the relative wealth of the parties during his summation to the jury. In their argument to the jury, attorneys are afforded wide latitude in discussing facts supplied by the evidence. Aguilar v. Carpenter, 1 Ariz.App. 36, 39, 399 P.2d 124 (1965). The record does not reflect the impropriety alleged by defendants. Counsel's argument, while not lacking in emotional verve, was confined to facts furnished by the evidence and reasonable inferences therefrom. We find no error in the trial court's refusal to grant either a mistrial or a new trial on the grounds of prejudicial argument of counsel.

Additional assignments of error are directed to the trial court's giving and refusal to give certain instructions. Defendants contend that the lower court erred in refusing to instruct the jury *not* to consider plaintiffs' loss of earnings or future medical expenses as elements of damages since there was no evidentiary support for these elements. They rely on Sisters of St. Joseph in Arizona v. Edwards, 45 Ariz. 407, 44 P.2d 155 (1935) as authority for their position but we do not believe the case is controlling. In the cited case, our Supreme Court held that the court erred in refusing to give defendants' requested instruction to exclude compensation for permanent injury when it had instructed the jury that it had a right to consider the permanent character of the injuries, if any. The court stated:

"There was no pleading alleging a permanent injury or a loss of earning capacity, nor was there any evidence of such an injury before the jury. *The instruction given was of such a nature,* *however, that the jury might well believe such an issue was in the case.* Indeed, the refusal to give the instruction asked by the defendant would indicate that the trial court itself was of the opinion that the issue of permanent injury and loss of earning capacity should under the pleadings and the evidence go to the jury. *If the court was thus misled, it* is but reasonable to suppose that the jury would also be mistaken and that the rather large verdict * * * was as a matter of fact based to some extent in the minds of the jury on a permanent injury." 45 Ariz. at 413, 414, 44 P.2d at 157. (Emphasis supplied)

In the instant case, although the plaintiffs' complaint alleged future medical expenses and that financial losses were sustained as a result of Mrs. Pacioni's being unable to continue in the family business operation, there was no instruction which might be construed as submission of the issue of loss of earnings or future medical expenses. The giving of a negative instruction is not usually desirable, Vegodsky v. City of Tucson, 1 Ariz.App. 102, 109, 399 P.2d 723 (1965), and we find no error in the refusal to give the defendants' requested instruction. The trial court carefully delineated the elements of damages to be considered by the jury.

We find no merit in defendants' attack on the following instruction:

"You may also consider those expenses shown to have been incurred for X-rays drugs and medicine in connection with their injuries."

Defendants claim that the court erred in permitting the jury (1) to consider an award for X-ray expenditures and (2) to speculate as to expenditures for medicines and drugs not included in the doctor's bills in evidence. In settling instructions, the defendants objected as follows:

"We object to the giving of Plaintiffs' Requested Instruction No. 4 insofar as it permits the jury to award any sum for expenses shown by the evidence to have been incurred for X-rays, drugs,

and medicines upon the ground and for the reason that there are only two bills in evidence and those bills are the only evidence of any medical expenses in this case and both bills are doctor bills and therefore to permit the jury to guess or speculate as to the amount expended for any X-rays, drugs or medicines aside from those shown on the bills in evidence would be error."

■ The two bills in evidence, it is true, were sent out on doctors' bill letterheads. One, indicating referral by Dr. La Joie, Mrs. Pacioni's treating physician, does not in ipsis verbis state "X-rays." The X-rays themselves, however, which were also in evidence indicate the same doctors' names as appear on the bill. Dr. La Joie testified that the X-rays were taken at his request. There being sufficient evidence in the record of expenditures for X-rays, the instruction thereon was proper.

The second bill, that of Dr. La Joie, includes various charges for injections and ethyl chloride spray. The doctor testified that the injections consisted of cortisone and vitamin B-12 complex and that ethyl chloride is a compound used in the treatment of muscle spasm. Thus we see that there was evidence of expenditures for drugs, justifying an instruction thereon.

Defendants further contend that the trial court's instructions relating to the right to assume others will obey the law and the duty of a driver to watch for "recurring road conditions" were confusing, inapplicable and prejudicial to the defendants on the issue of liability. Plaintiffs' requested instruction number 10, given over defendants' objection, was:

"You are instructed that a person operating a motor vehicle in urban traffic is required to exercise ordinary care to keep the vehicle under control to meet recurring traffic problems and road conditions."

Defendants' stated objection to this instruction was that there was no evidence in the case to justify the instruction and that it was not a correct statement of the law as it was incomplete.

Plaintiffs' requested instruction number 9, given over defendants' objection that there was no evidence to justify the instruction, was:

"Every person who is himself exercising ordinary care upon the highway has a right to assume that every other person will perform his duty to exercise reasonable care and will obey the law; and he has a right to rely and act on that assumption."

■ On appeal, this court will consider only the objections to instructions advanced in the court below. Salinas v. Kahn, 2 Ariz.App. 181, 407 P.2d 120, 128 (1965). A complaint that an instruction is not a correct statement of the law does not constitute a distinct statement of grounds for objection within the purview of Rule 51(a), Arizona Rules of Civil Procedure, 16 A.R.S., and is insufficient. Kostolansky v. Lesher, 95 Ariz. 103, 105, 387 P.2d 804 (1963).

■ As to instruction number 10, defendants argue that there was no evidence whatsoever that gravel at an intersection is a "recurring road condition." Concededly there was no evidence as to the recurrence of such condition. As we read the instruction, however, we construe it to require a driver in urban traffic to control his vehicle in accordance with then existing road conditions. There was sufficient evidence of the existence of a road condition, i. e., gravel on the road, to justify the instruction. If the word "recurring" was objectionable to defendants as unsupported by the evidence, such fact should have been called to the trial court's attention. We find no error in the instruction as given.

■ Defendants urge that instruction number 9 was improper as the conduct of the driver of the car in which Mrs. Pacioni was riding was not an issue. The objection in the lower court was solely on the basis that there was no evidence to support it. There being evidence in the case to support

the instruction, we find no error in the trial court's giving same.

Since we have eliminated counsel's argument and the propriety of instructions as grounds for presuming the verdict was the result of passion and prejudice, our remaining consideration is whether the $12,-500 verdict returned by the jury is so manifestly unfair, unreasonable and outrageous as to shock the conscience of this court. Young Candy & Tobacco Company v. Montoya, 91 Ariz. 363, 370, 372 P.2d 703 (1962).

The evidence shows that the direct pecuniary damages to the plaintiffs amounted to approximately $550. There is no evidence in the record as to loss of earnings by Mrs. Pacioni, but there was evidence to the effect that she contributed her services to the operation of the family business enterprise. Further, it was necessary to hire additional help in the restaurant to take her place, although the exact cost of replacement was not established. Mrs. Pacioni at the time of her injury was accustomed to caring for her home and after the accident required her family's assistance for the heavy chores. According to Mrs. Pacioni's physician, she sustained a sprain of her spine which aggravated a pre-existing osteoarthritic condition. He testified as to the pain she endured while under his care and Mrs. Pacioni testified that she was still suffering pain more than two years after the injury. She stated:

> "I couldn't move some days, and I had such terrible pain that I just took pills all day long, and he prescribed pills besides aspirins and Bufferins that I took on my own."

The doctor testified as to objective symptoms of muscle spasm and limitation of neck motion and their permanent character. At the time of trial, Mrs. Pacioni was 47 years of age with a life expectancy of 27 years.

When we consider the evidence in the strongest manner in plaintiffs' behalf,

the nature of Mrs. Pacioni's injury and the entire background of the case, we cannot say that the amount awarded by the jury for pain and suffering, past and prospective, and for permanency of the injury are so flagrantly outrageous as to show it was actuated by passion and prejudice.

Finding no grounds to disturb the judgment, it is accordingly affirmed.

KRUCKER, C. J., and MOLLOY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.