455 P.2d 480

In the Matter of the ESTATE of Dunham B. SHERER, Deceased.

Frank A. SHERER, Clark G. Sherer, and Mrs. Marguerite Kildea, Appellants,

v.

Donna SHERER, Executrix, Appellee.

No. 1 CA–CIV 627.

Court of Appeals of Arizona.

June 16, 1969.

**32**

upholding the validity of a will in a contest action based on a charge of undue influence.

Dunham B. Sherer, the decedent, died in Phoenix, on January 18, 1965. At issue is his "LAST WILL AND TESTAMENT," executed on March 4, 1959, in Westchester County, New York, his previous residence. Donna Sherer, the proponent and appellee, is the widow of decedent, having been married to him since March 15, 1937. No children were born of the marriage. The contestants and appellants, Frank A. Sherer, Marguerite Kildea, and Clark G. Sherer, are children of the decedent by a previous marriage. The will left all property to the widow.

The will was admitted to probate and thereafter appellants filed an unverified petition to revoke probate, alleging undue influence on the part of appellee. Some three and a half months after issue was joined, with no motion for trial setting having been made, the appellee moved for summary judgment, attaching to the motion her affidavit and the affidavits of Sidney I. Liebowitz, the lawyer who prepared the will, and Elizabeth Henson, a witness to the will. In her own affidavit, appellee denied exercising any influence over the decedent concerning the disposition of his property. The affidavit of Sidney I. Liebowitz, states that he drafted the will "* * * in accordance with the instructions given to his then law partnership * * * by DUNHAM B. SHERER * * *" This affidavit of Liebowitz also states:

"That at the time and place of the execution of said Will, DUNHAM B. SHERER was of sound mind and memory and that he was not at that time and place acting under any menace, fraud, duress, undue influence or misrepresentation.

"That at the time and place of the execution of the said Will, affiant asked DUNHAM B. SHERER if the instrument was his Last Will and Testament, and after stating that it was, DUNHAM

---

Francis R. Crable, Phoenix, for appellants.

Gust, Rosenfeld & Divelbess, Phoenix, by Richard H. Whitney, and Eugene C. Simon, Phoenix, for appellee.

MOLLOY, Judge.

The question before us is whether it was proper to grant a summary judgment

B. SHERER signed it in the presence of all three witnesses."

The affidavit of Elizabeth Henson is to the same effect.

In response to appellee's motion, the substantially identical affidavits of the three appellants were filed. The joint affidavit of two appellants reads:

\* \* \* \* \* \*

"Affiants allege that on or about August 2, 1946, and while the said DUNHAM B. SHERER and DONNA SHERER were married, DUNHAM B. SHERER executed a will in which your affiants were devised and bequeathed a substantial portion of his property, and in which your affiant FRANK AUDEMARS SHERER and CORN EXCHANGE BANK TRUST COMPANY were named as Executors and Trustees thereof, last affiant SHERER to act without compensation for his services as such, and no security being required of either in any jurisdiction.

"On or about the 4th day of March, 1959, DUNHAM B. SHERER, acting upon the entreaties, solicitations, importunate suggestions, and undue influence of the said DONNA SHERER, executed another will, the one in suit, in which after payment of debts, funeral expenses, taxes, etc., DONNA SHERER was made sole beneficiary, and sole Executrix thereof.

"For many years of his life, Deceased had been an employee and/or officer in banks, and believed in banks and in their part in the administration of Estates, that he did not know the then law partnership of GOODHUE and LIEBOWITZ, 226 East Main Street, Mount Kisco, New York, and that DONNA SHERER solicited said law firm to draw the will, excluding affiants as beneficiaries, and exercised undue influence upon her husband to execute it, after its drafting by the firm of lawyers so selected by her.

"That at all times mentioned herein, Deceased was a man of advancing years, was almost ninety when he died; that is, the age of eighty-eight; his physical and mental powers were deteriorating through the years, that DONNA SHERER, after the marriage and particularly during the times referred to covering the execution of the wills, erected a wall between Deceased and affiants, and on occasion prevented the Deceased from seeing them.

"During his last days upon earth, she did not supply him with the medical attention and facilities appropriate for a man of his station in life, and that all through said periods of time set forth herein, she unduly influenced, entreated, and beseeched Deceased to execute the 1959 will, and in effect substituted her own wishes and desires for his own free act and deed.

"The undue influence overpowered the will of Deceased, and was operating upon him at the time of execution of the will, and resulted in an unnatural, unreasonable and unfair type of will. Affiants are competent to testify to the matters stated herein.

"During the years indicated herein, contestants allege that the said DONNA SHERER conceived and executed a plan to substitute her will and desires for the free and voluntary will and desires of the Deceased in the making of the 1959 will."

This affidavit is the only evidentiary matter in the record to be weighed against the motion of summary judgment. There were no depositions taken by the parties, though the motion was not ruled upon until five months after the filing of the motion, and final judgment was not entered until eighteen months after the filing of the will contest. The fact that the testimonial qualifications of the affiants do not appear in these affidavits was a basis for objection in the lower court, but no effort was made to correct any deficiencies in this regard, nor, in the memoranda filed in the lower court by the objectors, is there any suggestion that they have knowledge of

any additional evidence to establish undue influence.

On this appeal, from the granting of appellee's motion, appellants contend that their affidavits were sufficient to raise a genuine issue of material fact as to whether appellee exercised undue influence over Dunham B. Sherer in the execution of his will. Our determination of the contention requires an analysis of the contents of the affidavits in the light of the applicable law relating to undue influence and the standards to be applied in passing upon motions for summary judgment.

The parties have devoted considerable effort to a discussion of the presumption of undue influence which arises when the principal beneficiary of a will was in a "fiduciary" or "confidential" relationship with the testator, and was active in the preparation or procurement of the will. *See* In re O'Connor's Estate, 74 Ariz. 248, 260, 246 P.2d 1063, 1071 (1952); In re Pitt's Estate, 88 Ariz. 312, 317, 356 P.2d 408, 411 (1960); In re Estate of McCauley, 101 Ariz. 8, 11, 415 P.2d 431, 434 (1966); In re Estate of Harber, 102 Ariz. 285, 289, 428 P.2d 662, 666 (1967).

■ However, we do not believe we are concerned with presumptions, but with the special procedural rule pertaining to motions for summary judgment. As we read Rule 56, Rules of Civil Procedure, 16 A.R. S., it is an all-inclusive rule procedurally insofar as summary judgments are concerned. The presumption of undue influence is a rule governing the trial itself, and pertains to the burden of going forward with the evidence at that time. *See* In re Estate of Harber, *supra,* 102 Ariz. at 291, 428 P.2d 662 (note 1). As to motions for summary judgment, there are correlative but different rules governing the "burdens of proof."

■ Appellee had the initial burden of establishing that there was no genuine issue of material fact and that she was entitled to judgment as a matter of law. *See, e. g.,* Elerick v. H. B. Rocklin Real Estate Investments, 102 Ariz. 78, 425 P.2d

103 (1967); and *see* Flynn v. Lindenfeld, 6 Ariz.App. 459, 433 P.2d 639 (1967). Appellee did this by her showing that she was the wife of the testator, Estate of McCauley, *supra,* by her sworn statement that she did not exercise influence over the decedent, and by the affidavits of Sidney I. Liebowitz and Elizabeth Henson. Because the proponent's burden here is essentially a negative one, conclusory statements are not inappropriate. Once this initial burden was met, it became incumbent upon appellants to set forth:

"* * * by affidavits or as otherwise provided * * * *specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis added) Rule 56(e), R.Civ.P., as amended, 16 A. R.S.

Rule 56(e) requires that affidavits in support of, and in opposition to, motions for summary judgment:

"* * * *shall be made on personal knowledge, shall set forth such facts as as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.* Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." (Emphasis added)

Of critical importance in the present case is the rule that "* * * mere conclusions of ultimate fact and law do not satisfy the Rule's requirement that specific facts be set forth * * *" Harmon v. Szrama, 102 Ariz. 343, 345, 429 P.2d 662, 664 (1967).

The *factum probandum* here is "undue influence," a somewhat elusive concept. In Estate of McCauley, *supra,* our Supreme Court described the nature of undue influence in the following terms:

"* * * a person unduly influences a testator or testatrix in executing a will when that person through his power over the mind of the testator or testatrix

makes the latter's desires conform to his own, thereby overmastering the volition of testator or testatrix."

101 Ariz. at 10, 415 P.2d at 433.

It has been stated, however, that "Mere general influence is not enough. A contestant must show that the influence was *brought directly to bear upon the testamentary act*." In re Fritschi's Estate, 60 Cal. 2d 367, 33 Cal.Rptr. 264, 268, 384 P.2d 656, 660 (1963) (emphasis added). Undue influence must operate upon the testatrix " * * * at the time of the execution of her will." In re Estate of Harber, *supra*, 102 Ariz. at 292, 428 P.2d at 669; and *see* In re Estate of Roberts, 258 Iowa 880, 140 N.W.2d 725, 730 (1966).

■ The degree of proof necessary to upset a will for undue influence is that of " * * * clear preponderance of the evidence." In re O'Connor's Estate, *supra*, 74 Ariz. at 260, 246 P.2d 1063, 1071, requoted in In re Pitt's Estate, 88 Ariz. at 317, 356 P.2d 408. The *O'Connor, Pitt* and *Harber* opinions, all of which held that the record presented no factual issue on undue influence, evidence that this is not an easy burden to meet.

■ While undue influence is not often susceptible of direct proof and may be shown by circumstantial evidence, Estate of McCauley, 101 Ariz. at 10, 415 P.2d at 433, the mere showing that the person benefited had opportunity to influence the testator is insufficient. In re Anderson's Estate, 353 Mich. 169, 91 N.W.2d 356, 358 (1958); and *see* Schlachter v. Schlachter, 396 Ill. 184, 71 N.E.2d 153, 155 (1947).

In Estate of McCauley, which involved a will executed by a woman less than thirteen months after her marriage to a man who had made fraudulent misrepresentations to her and who had been active even prior to marriage in obtaining money from her and in attempting to overturn her previous property arrangements, the court stated that "However, proponent's marriage to testatrix *does not completely* insulate him from a possible finding that he unduly influenced his spouse in executing her will."

101 Ariz. at 11, 415 P.2d at 434 (emphasis added).

Other decisions and textwriters adopt the view that a spouse, and particularly a wife, is entitled to exert a degree of influence in her own behalf over the husband's disposition of property without it amounting to what the law terms "undue" influence. In the Matter of the Estate of Raynolds, 132 N.J.Eq. 141, 27 A.2d 226 (Prer. Court 1942), aff'd per curiam, 133 N.J.Eq. 344, 32 A.2d 353 (Err. and App.1943); Canfield v. Canfield, 167 Okl. 590, 31 P.2d 152 (1934), and authorities quoted at 31 P.2d 156–157; Thompson on Wills (3d ed. 1947), § 144, at 228; Rollison on Wills (Callaghan 1939) § 67, at 120.

Our Supreme Court has outlined certain factors or indicia which are particularly to be considered as bearing upon the question of undue influence:

"Whether the alleged influencer has made fraudulent representations to the testatrix; whether the execution of the will was the product of hasty action; whether the execution of the will was concealed from others; whether the person benefited by the will was active in securing its drafting and execution; whether the will as drawn was consistent or inconsistent with prior declarations and plannings of the testatrix; whether the will was reasonable rather than unnatural in view of the testatrix' circumstances, attitudes, and family; whether the testatrix was a person susceptible to undue influence; and whether the testatrix and the beneficiary have been in a confidential relationship." In re Estate of McCauley, 101 Ariz. at 10–11, 415 P.2d at 433.

With this substantive law in mind, we turn to the affidavits of the contestants. There we find no facts stated tending to show that the will in question was a product of hasty action, or that appellee had made any fraudulent misrepresentations to her husband pertaining to the disposition of his property. The only statement made with regard to the decedent's susceptibility

to undue influence is that he was "* * * at all times mentioned herein, * * * a man of advancing years, was almost ninety when he died; that is, the age of eighty-eight; his physical and mental powers were deteriorating through the years * * *". Affiants do not state that the decedent was afflicted by any specific infirmity, and there is only a vague innuendo as to what his mental condition may have been six years before his death, when this will was made.

In the third paragraph of the affidavits, the affiants "allege" that in 1946 the decedent executed a will in which they were bequeathed a "substantial" portion of his property and in which one of the affiants and the "CORN EXCHANGE BANK TRUST COMPANY" were named as executors and trustees. In the fifth paragraph, affiants state that decedent "* * * believed in banks and in their part in the administration of Estates * * *" and that the decedent "* * * did not know the then law partnership of GOODHUE and LIEBOWITZ * * *" These statements are presumably intended to show that the will in issue was unnatural and unjust, and inconsistent with the testator's previous disposition or planning.

We note, preliminarily, that no copy of the "alleged" will was attached to any of appellants' affidavits, contrary to the terms of Rule 56(e), and that no explanation is offered for its omission. We note also that it is at least doubtful that appellants would be permitted to testify at the trial that the decedent "did not know" of the law firm which drew his will. *See* Sneed v. Marysville Gas & Electric Co., 149 Cal. 704, 87 P. 376 (1906) ;[1] and Miller v. Plains Insurance Company, 409 S.W.2d 770, 775 (Mo.App. 1966). But, even if these matters are overlooked, there are no *facts* appearing in the affidavits which point to an unnatural or inconsistent disposition.

The only statements in the affidavits regarding secrecy or concealment at the time of execution of the will are that appellee "* * * erected a wall between Deceased and affiants, and on occasion prevented the Deceased from seeing them." There is no indication in the affidavit that the language concerning erection of a wall is to be taken literally, and figurative language of this type obviously has no place in an affidavit. But, whatever the nature of the "wall" erected by appellee, it was only "on occasion" effective to prevent contact between affiants and the decedent. There is no assertion that affiants did not have access to the decedent at the time of execution of the will in question, and thereafter.

If we go beyond the indicia of *McCauley,* we have only the assertions that the proponent "* * * entreated, and beseeched * * *" the testator to execute this will. In the context of these affidavits, and with proper objection being raised to testimonial qualifications, we find these to be conclusions—not "facts admissible in evidence" supported by the foundation of "personal knowledge" required to be affirmatively shown by Rule 56.

■ Rendering the opposing affidavits down to *facts,* as to which testimonial qualifications are shown, we are left with the circumstances that a wife, married to a testator for nearly twenty-two years prior to execution of the will in question and over twenty-seven years at the time of his death, is the sole beneficiary of the will, and that she was active in its preparation, a fact which she admits for the purposes of this appeal. The admission must be viewed in the light of the preparing attorney's affidavit that instructions regarding the will were given to its draftsman by the decedent, and *McCauley's* holding that a husband-wife relationship is not one giving rise to the presumption of undue influence (101 Ariz. at 11, 415 P.2d 431). If the ex-

1. Wigmore is critical of the *Sneed* exclusionary holding "on the facts," *see* n. 1 to 2 Wigmore, Evidence § 661 (3d ed. 1940), at 774, but in the absence of an unusually closely contained relationship, not shown here, it seems sound to conclude that one cannot testify that a particular fact or acquaintance was within or without another's knowledge.

istence of all factors sufficient to give rise to presumption of undue influence is not sufficient to take the issue to a jury, *see* In re Pitt's Estate, *supra,* 88 Ariz. at 317–318, 356 P.2d at 411–412, it stands to reason that the absence of all of those factors, without more by way of other indicia, would be inadequate to raise a triable issue of fact.

We agree with appellants that a motion for summary judgment is not a "trial by affidavits." *See* Sarti v. Udall, 91 Ariz. 24, 26, 369 P.2d 92, 93 (1962). Moreover, a summary judgment should be sparingly used when a state of mind is at issue. Reidy v. Almich, 4 Ariz.App. 144, 148, 418 P.2d 390, 394 (1966). Neither the trial judge nor this court may weigh evidence on a motion for summary judgment.

Elerick v. H. B. Rocklin, Real Estate Investment *supra.* However, Rule 56 requires at least a minimal showing of the existence of admissible evidence to make out a factual issue for determination by the fact finder and here we see no such showing. *Compare* In re Estate of Niquette, 264 A.C.A. 1114, 71 Cal.Rptr. 83 (1968), affirming a summary judgment against a contestant alleging undue influence.

Affirmed.

HATHAWAY and KRUCKER, JJ., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.